UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY D. RUNELS, | CASE NUMBER: |
| Plaintiff, | 1:23-cv-00253 |
| v. | |
| RAY P. STATLER, LESLIE A. STATLER, and CHICAGO TITLE INSURANCE COMPANY, | |
| Defendants. | |

## **<u>COMPLAINT</u>**

The Plaintiff, Jeffrey D. Runels, pursuant to Fed. R. Civ. P. 8(a), as and for his Complaint against the Defendants, Ray P. Statler, Leslie A. Statler, and Chicago Title Insurance Company, sets forth and alleges as follows:

<u>The Parties</u>

1.      Plaintiff Jeffrey D. Runels is a natural person and a citizen of the State of Indiana who is domiciled in St. Joseph County, Indiana.

2.      Defendant Ray P. Statler is a natural person and a citizen of the State of Michigan who is domiciled in Cass County, Michigan.

3.      Defendant Leslie A. Statler is a natural person and a citizen of the State of Michigan who is domiciled in Cass County, Michigan.

4.      Defendant Chicago Title Insurance Company ("<u>Chicago Title</u>") is a corporation that is incorporated under the laws of the State of Florida and has its principal place of business in the State of Florida.

5.      The property that is the subject of this action is commonly known as V/L Runkle Street, Niles, Michigan 49120, and is more particularity described in the legal description that is attached to this Complaint as **Exhibit A** (the "Property").

JURISDICTION AND VENUE

6.      The matters in controversy in this action exceed the sum or value of $75,000.00, exclusive of interest and costs.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Defendants Ray P. Statler and Leslie A. Statler (collectively, the "Statler Defendants") because the Statler Defendants are citizens of, and present within, the State of Michigan.

9.      This Court has personal jurisdiction over Chicago Title because it: (a) carries on a continuous and systematic part of its general business within the State of Michigan; (b) maintains a registered agent in the State of Michigan; (c) contracted to insure a person, property, or risk located within the State of Michigan at the time of contracting; and (d) has otherwise made or established sufficient contacts with the State of Michigan such that requiring its appearance in this action does not offend traditional notions of fair play and substantial justice.

10.     Venue is proper within the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b), because (a) the Statler Defendants reside in this district, (b) the Property is situated within this judicial district, and (c) a substantial part of the allegations giving rise to this action are alleged to have occurred in this judicial district.

2

<u>General Allegations</u>

11.     On March 1, 1996, the Michigan Department of Natural Resources recorded a Notice of Possible Release of Hazardous Substances in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 00605, Page 0496 (the "<u>DNR Notice</u>").

12.     A true and accurate copy of the DNR Notice, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit B**.

13.     The DNR Notice states, among other things, as follows:

> Notice is hereby given, pursuant to MCL 299.610c, that the Michigan Department of Natural Resources, Real Estate Division, has information in its file indicating that there may have been a release or a threatened release of hazardous substances on the parcel of property legally described as follows:
>
> CASS COUNTY, TOWNSHIP OF MILTON
> T8S, R16W, Sec. 1
> W½ of W½ of NW¼
>
> A person who acquires property that may be contaminated as a result of a release(s) of a hazardous substance may become liable for all costs of cleaning up the property and any other properties impacted by the release(s). Liability may be imposed upon the person acquiring the property even in the absence of any personal responsibility for, or knowledge of, the release.  Accordingly, the Department recommends that a person who is interested in acquiring surplus State property contact an attorney or an environmental consultant for advice prior to the acquisition of any surplus State property.
>
> Anyone interested in purchasing this parcel should request this information from the Real Estate Division, Michigan Department of Natural Resources, Tax Land and Services, Fifth Floor, Stevens T. Mason Building, P.O. Box 30448, Lansing, Michigan 48909-7948.

14.     The Property is the parcel that is referred to, and legally described in, the DNR Notice.

15.     On March 27, 1996, the Michigan Department of Natural Resources, acting for and on behalf of the State of Michigan, executed a certain deed pursuant to which it granted, conveyed, and quit-claimed unto Water & Waste Environmental Ser. all the right, title, and interest acquired by the State of Michigan in and to the Property (the "<u>Water & Waste Environmental Deed</u>").

3

16.     On May 16, 2012, the Water & Waste Environmental Deed was recorded in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 1041, Page 2431.

17.     A true and accurate copy of the Water & Waste Environmental Deed, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit C**.

18.     In November 2005, the Van Buren/Cass District Health Department (the "Van Buren/Cass Health Department") adopted a Policy Regarding the SW Cass County Landfill Groundwater Contamination (the "Resolution").

19.     A true and accurate copy of the Resolution is attached to this Complaint as **Exhibit D**.

20.     In the Resolution, the Van Buren/Cass Health Department declared—among other things—that, in the interest of protecting the public health of present and future residents of the area surrounding the former Southwest Cass County landfill, (a) a reasonable area in all directions from the former Southwest Cass County landfill will be included in a ban on construction of new water wells, (b) each quarter section adjacent to the quarter section in which the former Southwest Cass County landfill was located will be included in the ban, (c) the area included within the ban on the construction of new water wells includes six quarter sections or approximately 1.5 square miles; and (d) the wells in the area will continue to be monitored under authorization of the Michigan Department of Environmental Quality ("MDEQ"), which is now known as the Michigan Department of Environment, Great Lakes, and Energy ("EGLE").

21.     The Property is the location of the former Southwest Cass County landfill.

22.     The Property is covered by the Resolution and is subject to the ban on construction of new water wells.

23.     At all times since the adoption of the Resolution by the Van Buren/Cass Health Department, the Resolution (a) has been and continues to be in effect, and (b) has not been rescinded, revoked, or modified by the Van Buren/Cass Health Department or any other governmental authority.

24.     On May 24, 2012, William Kevin Holbert, as sole proprietor and owner of Water & Waste Environmental Ser., executed a certain Quit-Claim Deed pursuant to which he quit-claimed the Property to William Kevin Holbert, a single man (the "Holbert Deed").

25.     On May 24, 2012, the Holbert Deed was recorded in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 1042, Page 910.

26.     A true and accurate copy of the Holbert Deed, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit E**.

27.     On June 18, 2012, William Kevin Holbert executed a certain Warranty Deed pursuant to which he conveyed and granted a portion of the Property to Ray P. Statler and Leslie A. Statler, husband and wife (the "First Statler Deed").

28.     On July 12, 2012, William Kevin Holbert executed a second Warranty Deed pursuant to which he conveyed and granted the remaining portion of the Property to Ray P. Statler and Leslie A. Statler, husband and wife (the "Second Statler Deed").

29.     On July 20, 2012, the Second Statler Deed was recorded in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 1044, Page 2576.

30.     A true and accurate copy of the Second Statler Deed, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit F**.

31.     On September 28, 2015, the First Statler Deed was recorded in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 1096, Page 1624.

32.     A true and accurate copy of the First Statler Deed, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit G**.

33.     In the First Statler Deed and the Second Statler Deed, the following statement was set forth:

> **THIS PROPERTY IS CURRENTLY ZONED FOR NO CONSTRUCTION DUE TO GROUND WATER ISSUES AND THERE WILL BE NO CONSTRUCTION ON SAID PROPERTY UNTIL THE STATUS IS CHANGED.**

34.     On February 27, 2021, Mr. Runels tendered a Vacant Land Buy and Sell Agreement to the Statler Defendants, wherein he offered to purchase the Property from the Statler Defendants for the sum of $325,000.00.

35.     On or about March 1, 2021, the Statler Defendants tendered a counter-offer to Mr. Runels, under the terms of which the Statler Defendants, as owners and sellers of the Property, accepted the Vacant Land Buy and Sell Agreement tendered by Mr. Runels to the Statler Defendants, except that the "purchase price [was] to [b]e $336,000" and the "[e]xpiration timeline was to [b]e extended until 3/5/2021."

36.     On March 5, 2021, Mr. Runels accepted the Statler Defendants' counter-offer in writing, as reflected in the Vacant Land Buy and Sell Agreement that is attached to this Complaint as **Exhibit H** (the "Buy and Sell Agreement").

37.     Under the terms of the Buy and Sell Agreement, the Statler Defendants agreed to sell the Property to Mr. Runels, and Mr. Runels agreed to purchase the Property from the Statler Defendants (the "Real Estate Transaction"), for the sum of $336,000.00 (the "Purchase Price").

38.     In connection with the Real Estate Transaction, Near North Title Group, as issuing agent for Chicago Title Insurance Company, issued a Commitment for Title Insurance (Commitment No. MI2123189) to Mr. Runels, dated March 5, 2021, under which Mr. Runels was the Proposed Insured and the Proposed Policy Amount was $336,000.00 (the "Title Insurance Commitment").

39.     A true and accurate copy of the Title Insurance Commitment is attached to this Complaint as **Exhibit I**.

40.     The Title Insurance Commitment did not identify or disclose the existence of the DNR Notice, nor did the Title Insurance Commitment include the DNR Notice within any requirements for coverage, conditions to coverage, or exceptions or exclusions from coverage.

41.     The Title Insurance Commitment did not identify or disclose the existence of the Resolution, nor did the Title Insurance Commitment include the Resolution within any requirements for coverage, conditions to coverage, or exceptions or exclusions from coverage.

42.     On March 12, 2021, Mr. Runels remitted payment of the Purchase Price in full to the Statler Defendants, and the Statler Defendants signed and delivered to Mr. Runels a Warranty Deed for the Property (the "Runels Deed").

43.     A true and accurate copy of the Runels Deed is attached to this Complaint as **Exhibit J**.

44.     At the time that Mr. Runels remitted payment of the Purchase Price to the Statler Defendants on March 12, 2021, in exchange for the Runels Deed, Mr. Runels was unaware of any

groundwater contamination or environmental issues, or any related use restrictions or limitations, on the Property.

45.     On March 15, 2021, during a conversation between Mr. Runels and Ray Statler regarding the Property, Ray Statler disclosed to Mr. Runels that the Property is the location of the former Southwest Cass County landfill.

46.     On March 16, 2021, Mr. Runels contacted Near North Title Group regarding Ray Statler's March 15, 2021 disclosure that the Property is the location of the former Southwest Cass County landfill, and Near North Title Group then disclosed to Mr. Runels the existence of the DNR Notice.

47.     On March 16, 2021, the Runels Deed was recorded in the Office of the Register of Deeds for the County of Cass, State of Michigan, in Liber 1192, Page 396.

48.     A true and accurate copy of the Runels Deed, bearing the recording stamp of the Register of Deeds for the County of Cass, State of Michigan, is attached to this Complaint as **Exhibit K**.

49.     After learning from Ray Statler that the Adjacent Parcel is the location of the former Southwest Cass County landfill, and after learning from Near North Title Group of the existence of the DNR Notice, Mr. Runels retained Nexus Environmental Group, LLC ("Nexus") to perform environmental site assessments on the Property.

50.     On March 29, 2021, Nexus completed a Phase I Environmental Assessment Report for the Property, in which it identified the following Recognized Environmental Condition at the Property:

> **REC1:**  The historic landfill operations occurring at the Site have contaminated groundwater, pose potential direct contact risks and pose a hazard due to collection and migration of landfill gases.

8

51.     In light of the Recognized Environmental Condition identified during the Phase I Environmental Assessment, Nexus performed a Limited Phase II Environmental Assessment on the Property.

52.     On April 22, 2021, Nexus completed its Limited Phase II Environmental Assessment Report for the Property.

53.     In its Limited Phase II Environmental Assessment Report, Nexus summarized the groundwater screening sample results for Volatile Organic Compounds (VOCs) on the Property and reported that the concentration of Benzene exceeded the Part 201 Generic Cleanup and Screening Levels.

54.     In its Limited Phase II Environmental Assessment Report, Nexus summarized the groundwater screening sample results for metals on the Property and reported that the concentrations of Arsenic, Barium, Chromium, and Lead exceeded the Part 201 Generic Cleanup and Screening Levels.

55.     As a result of the documented exceedances of Benzene, Arsenic, Barium, Chromium, and Lead on the Property, Nexus reported—in its Limited Phase II Environmental Assessment Report—that the Property meets the definition of a Part 201 Facility.

56.     On April 23, 2021, Nexus prepared a Baseline Environmental Assessment (BEA) Report (the "BEA Submittal") for submission to EGLE's Remediation and Redevelopment Division.

57.     In the BEA Submittal, Nexus reported that the Property meets the definition of a Part 201 Facility and provided the following table summarizing the analytes that exceeded residential criteria at the Property at the time of the assessment:

| Analyte | CAS Number | Sample location | Concentration ($\mu$g/L) |
|---------|-----------|-----------------|--------------------------|
| Benzene | 100-41-4 | PZ3 | 6.3 |
| Arsenic | 7440-38-2 | PZ2 | 330 |
| | | PZ3 | 37 |
| Barium | 7440-39-3 | PZ1 | 120 |
| | | PZ2 | 1600 |
| | | PZ3 | 660 |
| Chromium | 10025-73-7 | PZ2 | 740 |
| Lead | 7439-92-1 | PZ1 | 17 |
| | | PZ2 | 970 |

58.     In connection with the Real Estate Transaction, Mr. Runels obtained an Owner's Policy of title insurance, dated March 16, 2021, from Chicago Title in the amount of $336,000.00 (the "Title Insurance Policy").

59.     A true and accurate copy of the Title Insurance Policy is attached to this Complaint as **Exhibit L**.

60.     Mr. Runels is the named insured under the Title Insurance Policy.

61.     Chicago Title is the insurer under the Title Insurance Policy.

62.     Chicago Title is the underwriter of the Title Insurance Policy.

63.     The Underwriter Policy Number for the Title Insurance Policy is 7230600-223260429.

64.     The Title Insurance Policy insured the vesting of title to the Property in Mr. Runels, a married man, as the named insured under the Title Insurance Policy.

65.     The Property is the "Land" that is referred to in the Title Insurance Policy.

66.     The estate or interest in the Property that is insured by the Title Insurance Policy is Fee Simple.

67.     Subject to the exclusions from coverage set out in the Title Insurance Policy, the exceptions from coverage contained in Schedule B of the Title Insurance Policy, and the

conditions set out in the Title Insurance Policy, Chicago Title insured (under Covered Risk 1 of the Title Insurance Policy) as of March 16, 2021, and, to the extent stated in Covered Risks 9 and 10 of the Title Insurance Policy, after March 16, 2021, against loss or damage, not exceeding $336,000.00, sustained or incurred by Mr. Runels by reason of Title (as defined in the Title Insurance Policy) being vested other than as stated in Schedule A of the Title Insurance Policy.

68.     Subject to the exclusions from coverage set out in the Title Insurance Policy, the exceptions from coverage contained in Schedule B of the Title Insurance Policy, and the conditions set out in the Title Insurance Policy, Chicago Title insured (under Covered Risk 2 of the Title Insurance Policy) as of March 16, 2021, and, to the extent stated in Covered Risks 9 and 10 of the Title Insurance Policy, after March 16, 2021, against loss or damage, not exceeding $336,000.00, sustained or incurred by Mr. Runels by reason of any defect in or lien or encumbrance on the Title (as defined in the Title Insurance Policy).

69.     Under the terms of the Title Insurance Policy, Covered Risk 2 includes, but is not limited to, insurance against loss from a defect in the Title (as defined in the Title Insurance Policy) caused by fraud.

70.     Under the terms of the Title Insurance Policy, Covered Risk 2 includes, but is not limited to, insurance against loss from a defect in the Title (as defined in the Title Insurance Policy) caused by a document affecting Title (as defined in the Title Insurance Policy) not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered.

71.     Subject to the exclusions from coverage set out in the Title Insurance Policy, the exceptions from coverage contained in Schedule B of the Title Insurance Policy, and the conditions set out in the Title Insurance Policy, Chicago Title insured (under Covered Risk 3 of the Title Insurance Policy) as of March 16, 2021, and, to the extent stated in Covered Risks 9 and

10 of the Title Insurance Policy, after March 16, 2021, against loss or damage, not exceeding $336,000.00, sustained or incurred by Mr. Runels by reason of Unmarketable Title (as defined in the Title Insurance Policy).

72.     Subject to the exclusions from coverage set out in the Title Insurance Policy, the exceptions from coverage contained in Schedule B of the Title Insurance Policy, and the conditions set out in the Title Insurance Policy, Chicago Title insured (under Covered Risk 5 of the Title Insurance Policy) as of March 16, 2021, and, to the extent stated in Covered Risks 9 and 10 of the Title Insurance Policy, after March 16, 2021, against loss or damage, not exceeding $336,000.00, sustained or incurred by Mr. Runels by reason of the violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to the occupancy, use, or enjoyment of the Land (as defined in the Title Insurance Policy) if a notice, describing any part of the Land (as defined in the Title Insurance Policy), is recorded in the Public Records (as defined in the Title Insurance Policy) setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

73.     Subject to the exclusions from coverage set out in the Title Insurance Policy, the exceptions from coverage contained in Schedule B of the Title Insurance Policy, and the conditions set out in the Title Insurance Policy, Chicago Title insured (under Covered Risk 5 of the Title Insurance Policy) as of March 16, 2021, and, to the extent stated in Covered Risks 9 and 10 of the Title Insurance Policy, after March 16, 2021, against loss or damage, not exceeding $336,000.00, sustained or incurred by Mr. Runels by reason of the violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to environmental protection if a notice,

describing any part of the Land (as defined in the Title Insurance Policy), is recorded in the Public Records (as defined in the Title Insurance Policy) setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

74.     The Title Insurance Policy did not identify or disclose the existence of the DNR Notice, nor did the Title Insurance Policy include the DNR Notice within any requirements for coverage, conditions to coverage, or exceptions or exclusions from coverage.

75.     The Title Insurance Policy did not identify or disclose the existence of the Resolution, nor did the Title Insurance Policy include the Resolution within any requirements for coverage, conditions to coverage, or exceptions or exclusions from coverage.

76.     M.C.L. § 324.20101(1)(s) defines a "facility," in relevant part, as "any area, place, parcel or parcels of property, or portion of a parcel of property where a hazardous substance in excess of the concentrations that satisfy the cleanup criteria for unrestricted residential use has been released, deposited, disposed of, or otherwise comes to be located."

77.     None of the conditions set out in subparagraphs (i), (ii), (iii), (iv), (v), or (vi) of M.C.L. § 324.20101(1)(s) have been satisfied as to all or any portion of the Property.

78.     At all times since the Statler Defendants received the First Statler Deed and the Second Statler Deed, the Property has been and continues to be a "facility" under M.C.L. § 324.20101(1)(s).

79.     At all times since the Statler Defendants received the First Statler Deed and the Second Statler Deed, the Property has been and continues to be classified by EGLE as a "facility" under M.C.L. § 324.20101(1)(s).

80.     When the Statler Defendants tendered their counter-offer to Mr. Runels in the Buy and Sell Agreement on or about March 1, 2021, the Property was a "facility" under M.C.L. § 324.20101(1)(s).

81.     When the Statler Defendants tendered their counter-offer to Mr. Runels in the Buy and Sell Agreement on or about March 1, 2021, the Property was classified by EGLE as a "facility" under M.C.L. § 324.20101(1)(s).

82.     When Mr. Runels accepted the Statler Defendants' counter-offer in writing in the Buy and Sell Agreement on March 5, 2021, the Property was a "facility" under M.C.L. § 324.20101(1)(s).

83.     When Mr. Runels accepted the Statler Defendants' counter-offer in writing in the Buy and Sell Agreement on March 5, 2021, the Property was classified by EGLE as a "facility" under M.C.L. § 324.20101(1)(s).

84.     When the Statler Defendants signed the Runels Deed and delivered the same to Mr. Runels in exchange for his payment of the Purchase Price on March 12, 2021, the Property was a "facility" under M.C.L. § 324.20101(1)(s).

85.     When the Statler Defendants signed the Runels Deed and delivered the same to Mr. Runels in exchange for his payment of the Purchase Price on March 12, 2021, the Property was classified by EGLE as a "facility" under M.C.L. § 324.20101(1)(s).

86.     EGLE has assigned a "Facility ID" to the Property, with such Facility ID being 14000015.

87.     According to EGLE's Remediation Information Data Exchange, which is accessible at https://www.egle.state.mi.us/RIDE/inventory-of-facilities/facilities, the following contaminant classes are applicable to the Property:

      a.      Chlorinated Volatile and Semi Volatile Organic Compounds;

      b.      Elements/Metals/Other Inorganics;

      c.      Non-Petroleum Hydrocarbons;

      d.      Not Otherwise Classified; and

      e.      Petroleum Volatile and Semi Volatile Organic Compounds.

88.    According to EGLE's Remediation Information Data Exchange, which is accessible at https://www.egle.state.mi.us/RIDE/inventory-of-facilities/facilities, there are "Risks Present" on the Property that "Require Action in [the] Short-Term."

89.    Pursuant to M.C.L. § 324.20107a(1), a person who owns or operates property that he or she has knowledge is a facility shall, among other things, (a) undertake measures as are necessary to prevent exacerbation of hazardous substances at the Property; (b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

90.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants knew that the Property was a facility under M.C.L. § 324.20101(1)(s).

91.    As the owners or operators of the Property who had knowledge that the Property was a facility under M.C.L. § 324.20101(1)(s), the Statler Defendants were subject to the requirements imposed by M.C.L. § 324.20107a(1), including the requirement to (a) undertake measures as are necessary to prevent exacerbation of hazardous substances at the Property;

(b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

92.     As the owners or operators of the Property who had knowledge that the Property was a facility under M.C.L. § 324.20101(1)(s), the Statler Defendants had knowledge and were on notice that they were subject to the requirements imposed by M.C.L. § 324.20107a(1), including the requirement to (a) undertake measures as are necessary to prevent exacerbation of hazardous substances at the Property; (b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

93.     In violation of the requirements of M.C.L. § 324.20107a(1), the Statler Defendants failed to undertake measures as were necessary to prevent exacerbation of hazardous substances at the Property, including, for example, by failing to notify surrounding property owners and other interested persons (including Mr. Runels) of the groundwater contamination and environmental issues on the Property, failing to erect barrier fences on the Property, and failing to post signs warning third parties of the groundwater contamination and environmental issues on the Property.

94.     In violation of the requirements of M.C.L. § 324.20107a(1), the Statler Defendants failed to exercise due care by undertaking response activity necessary to mitigate unacceptable

exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the Property in a manner that protects the public health and safety, including, for example, by failing to notify surrounding property owners and other interested persons (including Mr. Runels) of the groundwater contamination and environmental issues on the Property, failing to erect barrier fences on the Property, and failing to post signs warning third parties of the groundwater contamination and environmental issues on the Property.

95.     In violation of the requirements of M.C.L. § 324.20107a(1), the Statler Defendants failed to take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions, including, for example, by failing to notify surrounding property owners and other interested persons (including Mr. Runels) of the groundwater contamination and environmental issues on the Property, failing to erect barrier fences on the Property, and failing to post signs warning third parties of the groundwater contamination and environmental issues on the Property.

96.     In Article 10(a) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

97.     In light of their violations of the requirements of M.C.L. § 324.20107a(1), the Statler Defendants' representation in Article 10(a) of the Buy and Sell Agreement was false, incomplete, and misleading.

98.     At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants knew that

their representation in Article 10(a) of the Buy and Sell Agreement was false, incomplete, and misleading.

99.     The Statler Defendants' misrepresentation in Article 10(a) of the Buy and Sell Agreement constitutes a material breach of the Buy and Sell Agreement.

100.    In Article 10(b) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the property."

101.    EGLE's continuing classification and regulation of the Property as a facility constitutes pending administrative action relating to the Property.

102.    EGLE's declaration in its Remediation Information Data Exchange that there are "Risks Present" on the Property that "Require Action in [the] Short-Term" constitutes a pending or threatened litigation, administrative action, or claim relating to the Property.

103.    The Resolution adopted by the Van Buren/Cass Health Department—which imposed a continuing ban on the construction of new wells on the Property and provides for the continuing regulation and monitoring of wells on and about the Property—constitutes pending administrative action relating to the Property.

104.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants had knowledge and information—including by virtue of the statements contained within the First Statler Deed and the Second Statler Deed disclosing that the Property was "**ZONED FOR NO CONSTRUCTION DUE TO GROUND WATER ISSUES**" and that "**THERE W[OULD] BE NO CONSTRUCTION ON [THE PROPERTY] UNTIL THE STATUS IS CHANGED**"—

that there was a pending or threatened litigation, administrative action or claim relating to the Property.

105.    The Statler Defendants' representation in Article 10(b) of the Buy and Sell Agreement was therefore false, incomplete, and misleading.

106.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants knew that their representation in Article 10(b) of the Buy and Sell Agreement was false, incomplete, and misleading.

107.    The Statler Defendants' misrepresentation in Article 10(b) of the Buy and Sell Agreement constitutes a material breach of the Buy and Sell Agreement.

108.    M.C.L. § 324.20116(1) provides as follows:

A person who has knowledge or information or is on notice through a recorded instrument that a portion or the entirety of a parcel of that person's property is a facility shall not transfer an interest in that real property unless he or she provides written notice to the purchaser or other person to which the property is transferred disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that are known by the person to apply. A restrictive covenant or notice that contains the required information that is recorded in the deed records for the property satisfies this requirement.

109.    When a person has knowledge or information or is on notice through a recorded instrument that a portion or the entirety of a parcel of that person's property is a facility, M.C.L. § 324.20116(1) imposes a duty upon such person to provide written notice to the purchaser or other person to which the property is transferred disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that are known by the person to apply.

110.    When the Statler Defendants signed the Runels Deed and delivered the same to Mr. Runels in exchange for his payment of the Purchase Price on March 12, 2021, the Statler

Defendants had knowledge or information or were on notice through a recorded instrument that a portion or the entirety of the Property was a facility as defined in M.C.L. § 324.20101(1)(s).

111.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not provide written notice to Mr. Runels disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

112.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not record a restrictive covenant or notice in the deed records for the Property disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

113.    By failing to provide written notice to Mr. Runels or record a restrictive covenant or notice in the deed records for the Property disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, the Statler Defendants violated the requirements of M.C.L. § 324.20116(1).

114.    Under Michigan law, the failure of a person to comply with the requirements of M.C.L. § 324.20116(1) when attempting to transfer an interest in real property renders the attempted transfer void. *1031 Lapeer LLC v. Rice*, 290 Mich. App. 225, 231 (Mich. Ct. App. 2010).

115.    Under Michigan law, the conveyance of a deed purporting to transfer an interest in real property without compliance with the requirements of M.C.L. § 324.20116(1) constitutes a

contract that (a) is founded on an act prohibited by a statute and (b) violates public policy. *1031 Lapeer LLC v. Rice*, 290 Mich. App. 225, 231 (Mich. Ct. App. 2010).

116.    As a result of the Statler Defendants' failure to comply with the requirements of M.C.L. § 324.20116(1), the Buy and Sell Agreement, the Runels Deed, and the Statler Defendants' attempt to transfer title to the Property to Mr. Runels were defective, void, and ineffective to vest title to the Property in Mr. Runels.

117.    As a result of the Statler Defendants' statutory violations, material misrepresentations, and fraudulent conduct, as described in this Complaint, the Buy and Sell Agreement, the Runels Deed, and the Statler Defendants' attempt to transfer title to the Property to Mr. Runels are defective, void or voidable, ineffective to vest title to the Property in Mr. Runels, and subject to rescission.

118.    In addition, in light of the Property's status as a facility, as well as the DNR Notice, the Resolution, and the obligations imposed by M.C.L. § 324.20107a(1), Mr. Runels has sustained or incurred losses and damages by reason of the violation or enforcement of laws, ordinances, permits, or governmental regulations (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to the occupancy, use, or enjoyment of the Property, or environmental protection, where a notice, describing any part of the Property, was recorded in the Public Records (as defined in the Title Insurance Policy) setting forth the violation or intention to enforce.

119.    Mr. Runels is, therefore, entitled to coverage under Covered Risks 1, 2, 3, and 5 of the Title Insurance Policy.

120.    By letter dated March 26, 2021, Mr. Runels' counsel notified Chicago Title that: (a) the Property constitutes a facility under Michigan law; (b) the Statler Defendants failed to

provide written notice to Mr. Runels as required by M.C.L. § 324.20116(1); (c) the Statler Defendants' failure to comply with M.C.L. § 324.20116(1) rendered the Runels Deed void; (d) Mr. Runels does not hold, and never has held, title to the Property; and (e) Mr. Runels is entitled to coverage under the Policy.

121.    A true and accurate copy of the letter (without enclosures) that Mr. Runels' counsel sent to Chicago Title on March 26, 2021, is attached to this Complaint as **Exhibit M**.

122.    In the March 26, 2021 letter, and in a follow-up letter sent to Chicago Title on May 12, 2021, Mr. Runels' counsel notified Chicago Title that, absent a prompt resolution of Mr. Runels' title insurance claim, Mr. Runels would be compelled to incur the expense of, and pay for, environmental assessments in order to be afforded protection under Michigan's Natural Resources and Environmental Protection Act, M.C.L. § 324.101 *et seq*. (the "NREPA").

123.    A true and accurate copy of the letter that Mr. Runels' counsel sent to Chicago Title on May 12, 2021, is attached to this Complaint as **Exhibit N**.

124.    On June 23, 2021, Chicago Title sent a letter to Mr. Runels' counsel advising that it had denied Mr. Runels' title insurance claim.

125.    A true and accurate copy of the letter (without enclosures) that Chicago Title sent to Mr. Runels' counsel on June 23, 2021, is attached to this Complaint as **Exhibit O**.

126.    After receiving Chicago Title's June 23, 2021 denial letter, Mr. Runels' counsel sent additional letters to Chicago Title on October 19, 2021, December 23, 2021, and February 14, 2022, re-asserting Mr. Runels' position that he is entitled to coverage under the Title Insurance Policy and requesting that Chicago Title reconsider its prior denial of his title insurance claim.

22

127.    True and accurate copies of the letters that Mr. Runels' counsel sent to Chicago Title on October 19, 2021, December 23, 2021, and February 14, 2022, are attached to this Complaint as **Exhibit P**, **Exhibit Q**, and **Exhibit R**, respectively.

128.    By letters dated January 12, 2022, and August 23, 2022, Chicago Title notified Mr. Runels' counsel of its decision to continue denying coverage for Mr. Runels' title insurance claim.

129.    A copy of the letter that Chicago Title sent to Mr. Runels' counsel on January 12, 2022, is attached to this Complaint as **Exhibit S**.

130.    A copy of the letter (without enclosures) that Chicago Title sent to Mr. Runels' counsel on August 23, 2022, is attached to this Complaint as **Exhibit T**.

131.    By denying Mr. Runels' title insurance claim, Chicago Title has materially breached its obligations to Mr. Runels under the Title Insurance Policy.

## COUNT I – DECLARATORY JUDGMENT
### (AGAINST ALL DEFENDANTS)

132.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 131 of this Complaint as though fully set forth in this paragraph.

133.    This action is brought pursuant to the provisions of 28 U.S.C. § 2201 *et seq*. and Fed. R. Civ. P. 57 for the purpose of determining an actual controversy between the parties regarding their respective rights, duties, obligations, responsibilities, and legal relations as to the Buy and Sell Agreement**,** the Runels Deed, the Property, the Real Estate Transaction**,** and the Title Insurance Policy.

134.    An actual controversy of a justiciable nature exists within the jurisdiction of this Court regarding the parties' respective rights, duties, obligations, responsibilities, and legal

relations as to the Buy and Sell Agreement, the Runels Deed, the Property, the Real Estate Transaction, and the Title Insurance Policy.

135.    A declaratory judgment in this action will terminate the uncertainty involved in, and the controversy giving rise to, this action.

136.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count I of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against the Defendants, Ray P. Statler, Leslie A. Statler, and Chicago Title Insurance Company:

A.    Declaring that the Property is, and at all relevant times has been, a facility as defined in M.C.L. § 324.20101(1)(s);

B.    Declaring that the Statler Defendants failed to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1);

C.    Declaring that, as a result of the Statler Defendants' violation of M.C.L. § 324.20116(1), the Buy and Sell Agreement, the Runels Deed, and the Statler Defendants' attempt to transfer title to the Property to Mr. Runels were defective, void, and ineffective to vest title to the Property in Mr. Runels;

D.    Declaring that Mr. Runels does not currently hold, and never has held, title to or an ownership interest in the Property, which at all relevant times has remained vested in the Statler Defendants;

24

E.      Declaring that Mr. Runels is entitled to coverage under the Title Insurance Policy, and that Chicago Title is legally obligated to remit payment to him for the full policy amount of $336,000.00, together with statutory interest on such amount as authorized and allowable under M.C.L. § 500.2006; and

F.      Awarding Mr. Runels such other and further relief as the Court deems necessary and proper under the circumstances.

## COUNT II – BREACH OF THE COVENANT OF WARRANTY
### (AGAINST THE STATLER DEFENDANTS)

137.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 136 of this Complaint as though fully set forth in this paragraph.

138.    On March 12, 2021, in accordance with the terms of the Buy and Sell Agreement, Mr. Runels paid the Purchase Price to the Statler Defendants.

139.    In exchange for the Purchase Price, the Statler Defendants were obligated—under the Buy and Sell Agreement—to execute and deliver to Mr. Runels a valid warranty deed for the Property.

140.    On March 12, 2021, the Statler Defendants executed and delivered the Runels Deed to Mr. Runels, which purported to convey and warrant the Property to Mr. Runels.

141.    Pursuant to M.C.L. § 565.151, the Runels Deed is deemed and held to be a conveyance in fee simple to Mr. Runels with a covenant from the Statler Defendants to Mr. Runels that, among other things, the Statler Defendants (a) had good right to convey the Property to Mr. Runels; (b) guaranteed that Mr. Runels would enjoy the quiet possession thereof, free from all incumbrances; and (c) would warrant and defend the title to the Property against all lawful claims.

142.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1), the Statler Defendants did not have good right to convey the Property to Mr. Runels.

143.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1), Mr. Runels does not enjoy quiet possession of the Property, free from all incumbrances.

144.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1), the Runels Deed was defective, void, and ineffective to vest title to the Property in Mr. Runels.

145.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1), Mr. Runels did not receive fee simple title to the Property.

26

146.    By virtue of the foregoing, the Statler Defendants materially breached their warranties, covenants, and guarantees under the Runels Deed, and Mr. Runels has sustained—and will continue to sustain—losses and damages as a direct and proximate result of such breaches, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur—property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake additional measures, and incur additional costs and expenses, in connection with environmental assessments, testing, and response activities on the Property.

147.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count II of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendants Ray P. Statler and Leslie A. Statler, jointly and severally:

A.    Rescinding the Buy and Sell Agreement, the Runels Deed, and the Real Estate Transaction; and

B.    Awarding Mr. Runels an amount to be proven at trial, which shall include, without limitation, (i) $336,000.00 to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (ii) $30,600.00 to reimburse Mr. Runels for the costs and

expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (iii) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (iv) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (v) statutory interest as authorized and allowable under M.C.L. § 600.6013; (vi) the costs of this action; and (vii) such other and further relief as this Court deems necessary and proper under the circumstances.

### COUNT III – BREACH OF BUY AND SELL AGREEMENT
### (AGAINST THE STATLER DEFENDANTS)

148.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 147 of this Complaint as though fully set forth in this paragraph.

149.    On March 12, 2021, in accordance with the terms of the Buy and Sell Agreement, Mr. Runels paid the Purchase Price to the Statler Defendants.

150.    In exchange for the Purchase Price, the Statler Defendants were obligated—under the Buy and Sell Agreement—to execute and deliver to Mr. Runels a valid warranty deed for the Property.

151.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of

M.C.L. § 324.20116(1), the Runels Deed was defective, void, and ineffective to vest title to the Property in Mr. Runels.

152.    As a result of their failure to provide written notice to Mr. Runels, or record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in violation of the requirements of M.C.L. § 324.20116(1), Mr. Runels did not receive fee simple title to the Property.

153.    The Statler Defendants, therefore, materially breached the Buy and Sell Agreement by failing to execute and deliver to Mr. Runels a valid warranty deed for the Property that was effective to transfer marketable, fee simple title to Mr. Runels.

154.    In Article 10(a) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

155.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, the Statler Defendants were in violation of their obligations under M.C.L. § 324.20107a(1), including by virtue of their failure to (a) undertake measures as were necessary to prevent exacerbation of hazardous substances at the Property; (b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable

29

acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

156.     At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants knew that they had not complied with their obligations under M.C.L. § 324.20107a(1).

157.     Despite the Statler Defendants' knowledge of their violations of M.C.L. § 324.20107a(1), the Statler Defendants falsely represented in Article 10(a) of the Buy and Sell Agreement that, to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

158.     The Statler Defendants' representation in Article 10(a) of the Buy and Sell Agreement was therefore false, incomplete, misleading, and constitutes a material breach of the Buy and Sell Agreement

159.     In Article 10(b) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the property."

160.     At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, the Statler Defendants had knowledge and information—including by virtue of the statements contained within the First Statler Deed and the Second Statler Deed disclosing that the Property was "**ZONED FOR NO CONSTRUCTION DUE TO GROUND WATER ISSUES**" and that "**THERE W[OULD] BE NO CONSTRUCTION ON [THE PROPERTY] UNTIL THE STATUS IS CHANGED**"—

that there was a pending or threatened litigation, administrative action, or claim relating to the Property.

161.    EGLE's continuing classification and regulation of the Property as a facility constitutes pending administrative action relating to the Property, and the Statler Defendants were on notice of such pending administrative action at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

162.    EGLE's declaration in its Remediation Information Data Exchange that there are "Risks Present" on the Property that "Require Action in [the] Short-Term" constitutes a pending or threatened litigation, administrative action, or claim relating to the Property, and the Statler Defendants were on notice of such pending administrative action at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

163.    The Resolution adopted by the Van Buren/Cass Health Department—which imposed a continuing ban on the construction of new wells on the Property and provides for the continuing regulation and monitoring of wells on and about the Property—constitutes pending administrative action relating to the Property, and the Statler Defendants were on notice of such pending administrative action at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

164.    Despite the Statler Defendants' knowledge of the pending or threatened litigation, administrative actions, or claims relating to the Property, the Statler Defendants falsely represented in Article 10(b) of the Buy and Sell Agreement that, to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the [P]roperty."

165.    The Statler Defendants' representation in Article 10(b) of the Buy and Sell Agreement was therefore false, incomplete, misleading, and constitutes a material breach of the Buy and Sell Agreement.

166.    By virtue of the foregoing, the Statler Defendants materially breached the Buy and Sell Agreement, and Mr. Runels has sustained—and will continue to sustain—losses and damages as a direct and proximate result of such breaches, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur—property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake additional measures, and incur additional costs and expenses, in connection with environmental assessments, testing, and response activities on the Property.

167.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count III of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendants Ray P. Statler and Leslie A. Statler, jointly and severally:

A.    Rescinding the Buy and Sell Agreement, the Runels Deed, and the Real Estate Transaction; and

B.     Awarding Mr. Runels an amount to be proven at trial, which shall include, without limitation, (i) $336,000.00 to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (ii) $30,600.00 to reimburse Mr. Runels for the costs and expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (iii) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (iv) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (v) statutory interest as authorized and allowable under M.C.L. § 600.6013; (vi) the costs of this action; and (vii) such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT IV – FRAUDULENT MISREPRESENTATION
### (AGAINST THE STATLER DEFENDANTS)

168.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 167 of this Complaint as though fully set forth in this paragraph.

169.    In Article 10(a) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

170.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, the Statler Defendants were in violation of their obligations under M.C.L. § 324.20107a(1), including by virtue of their

33

failure to (a) undertake measures as were necessary to prevent exacerbation of hazardous substances at the Property; (b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

171. At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, the Statler Defendants knew that they had not complied with their obligations under M.C.L. § 324.20107a(1).

172. Despite the Statler Defendants' knowledge of their violations of M.C.L. § 324.20107a(1), the Statler Defendants falsely represented in Article 10(a) of the Buy and Sell Agreement that, to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

173. The Statler Defendants' representation in Article 10(a) of the Buy and Sell Agreement was therefore false, incomplete, and misleading.

174. In Article 10(b) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the property."

175. At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, the Statler Defendants had knowledge and information—including by virtue of the statements contained within the First

34

Statler Deed and the Second Statler Deed disclosing that the Property was "**ZONED FOR NO CONSTRUCTION DUE TO GROUND WATER ISSUES**" and that "**THERE W[OULD] BE NO CONSTRUCTION ON [THE PROPERTY] UNTIL THE STATUS IS CHANGED**"— that there was a pending or threatened litigation, administrative action, or claim relating to the Property.

176.    EGLE's continuing classification and regulation of the Property as a facility constitutes pending administrative action relating to the Property, and the Statler Defendants were on notice of such pending administrative action at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

177.    EGLE's declaration in its Remediation Information Data Exchange that there are "Risks Present" on the Property that "Require Action in [the] Short-Term" constitutes a pending or threatened litigation, administrative action, or claim relating to the Property, and the Statler Defendants were on notice of such pending or threatened litigation, administrative action, or claim at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

178.    The Resolution adopted by the Van Buren/Cass Health Department—which imposed a continuing ban on the construction of new wells on the Property and provides for the continuing regulation and monitoring of wells on and about the Property—constitutes pending administrative action relating to the Property, and the Statler Defendants were on notice of such pending administrative action at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

179.    Despite the Statler Defendants' knowledge of the pending or threatened litigation, administrative actions, or claims relating to the Property—including by virtue of the statements

contained within the First Statler Deed and the Second Statler Deed disclosing that the Property was "**ZONED FOR NO CONSTRUCTION DUE TO GROUND WATER ISSUES**" and that "**THERE W[OULD] BE NO CONSTRUCTION ON [THE PROPERTY] UNTIL THE STATUS IS CHANGED**"—the Statler Defendants falsely represented in Article 10(b) of the Buy and Sell Agreement that, to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the [P]roperty."

180.    The Statler Defendants' representation in Article 10(b) of the Buy and Sell Agreement was therefore false, incomplete, and misleading.

181.    The Statler Defendants knew that the representations made in Article 10(a) and Article 10(b) of the Buy and Sell Agreement were false, incomplete, and misleading at the time they were made, or the Statler Defendants made the representations recklessly, or without any knowledge of their truth and as positive assertions.

182.    At the time that Mr. Runels remitted payment of the Purchase Price to the Statler Defendants on March 12, 2021, in exchange for the Runels Deed, Mr. Runels was unaware of any groundwater contamination or environmental issues, or any related use restrictions or limitations, on the Property.

183.    The Statler Defendants made the false, incomplete, and misleading representations in Article 10(a) and Article 10(b) of the Buy and Sell Agreement knowing that they were material to the Real Estate Transaction and would be acted upon by Mr. Runels.

184.    Mr. Runels did, in fact, act in reliance upon the false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement.

185.    The false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement constitute material misrepresentations.

186.    The false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement constitute fraudulent misrepresentations.

187.    As a result of the Statler Defendants' false, incomplete, and misleading representations in Article 10(a) and  Article 10(b) of the Buy and Sell Agreement, Mr. Runels has already sustained—and will continue to sustain—losses and damages, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur—property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake additional measures, and incur additional costs and expenses, in connection with environmental assessments, testing, and response activities on the Property.

188.    The damages that Mr. Runels has already sustained, and will continue to sustain, as a result of the false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement were foreseeable to the Statler

Defendants at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

189.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count IV of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendants Ray P. Statler and Leslie A. Statler, jointly and severally:

A.    Rescinding the Buy and Sell Agreement, the Runels Deed, and the Real Estate Transaction; and

B.    Awarding Mr. Runels an amount to be proven at trial, which shall include, without limitation, (i) $336,000.00 to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (ii) $30,600.00 to reimburse Mr. Runels for the costs and expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (iii) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (iv) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (v) statutory interest as authorized and allowable under M.C.L. § 600.6013; (vi) exemplary damages; (vii) the costs of this action; and (viii) such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT V – SILENT FRAUD
### (AGAINST THE STATLER DEFENDANTS)

190.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 189 of this Complaint as though fully set forth in this paragraph.

191.    When the Statler Defendants signed the Runels Deed and delivered the same to Mr. Runels in exchange for his payment of the Purchase Price on March 12, 2021, the Statler Defendants were under a legal obligation, pursuant to M.C.L. § 324.20116(1), to provide written notice to Mr. Runels, or to record a restrictive covenant or notice in the deed records for the Property, disclosing the known general nature and extent of the hazardous substance release on the Property and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

192.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not provide written notice to Mr. Runels disclosing the known general nature and extent of the hazardous substance release on the Property and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

193.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not record a restrictive covenant or notice in the deed records for the Property disclosing the known general nature and extent of the hazardous substance release on the Property and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

194.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not provide any notice, whether oral, written, or otherwise, to Mr. Runels disclosing the known general nature and extent of the hazardous substance release on

the Property and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

195.    Prior to their execution and delivery of the Runels Deed to Mr. Runels on March 12, 2021, the Statler Defendants did not provide any notice, whether oral, written, or otherwise, to Mr. Runels disclosing that the Property was a facility as defined in M.C.L. § 324.20101(1)(s).

196.    At the time that Mr. Runels remitted payment of the Purchase Price to the Statler Defendants on March 12, 2021, in exchange for the Runels Deed, Mr. Runels was unaware of any groundwater contamination or environmental issues, or any related use restrictions or limitations, on the Property.

197.    The Property's status and classification as a facility as defined in M.C.L. § 324.20101(1)(s), as well as the known general nature and extent of the hazardous substance release on the Property, and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property, were facts that were material to Mr. Runels' decision to sign the Buy and Sell Agreement and enter into the Real Estate Transaction.

198.    The Statler Defendants were duty-bound and legally obligated to disclose to Mr. Runels the known general nature and extent of the hazardous substance release on the Property, and any land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

199.    The Statler Defendants failed to disclose to Mr. Runels the known general nature and extent of the hazardous substance release on the Property, as well as the land or resource use restrictions that were known by the Statler Defendants to apply to the Property.

200.    By failing to disclose to Mr. Runels the known general nature and extent of the hazardous substance release on the Property, and the land or resource use restrictions that were

known by the Statler Defendants to apply to the Property, the Statler Defendants knew that Mr. Runels would be induced to sign the Buy and Sell Agreement and enter into the Real Estate Transaction.

201.    Mr. Runels relied on the Statler Defendants' failure to disclose the known general nature and extent of the hazardous substance release on the Property, and the land or resource use restrictions that were known by the Statler Defendants to apply to the Property, in making the decision to sign the Buy and Sell Agreement and enter into the Real Estate Transaction.

202.    By failing to disclose to Mr. Runels the known general nature and extent of the hazardous substance release on the Property, and the land or resource use restrictions that were known by the Statler Defendants to apply to the Property, the Statler Defendants committed silent fraud.

203.    As a result of the Statler Defendants' silent fraud, Mr. Runels has already sustained—and will continue to sustain—losses and damages, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur— property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake additional measures, and incur additional costs and expenses, in connection with environmental assessments, testing, and response activities on the Property.

204.     The damages that Mr. Runels has already sustained—and will continue to sustain—as a result of the Statler Defendants' silent fraud were foreseeable to the Statler Defendants at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

205.     All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count V of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendants Ray P. Statler and Leslie A. Statler, jointly and severally:

A.     Rescinding the Buy and Sell Agreement, the Runels Deed, and the Real Estate Transaction; and

B.     Awarding Mr. Runels an amount to be proven at trial, which shall include, without limitation, (i) $336,000.00 to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (ii) $30,600.00 to reimburse Mr. Runels for the costs and expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (iii) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (iv) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (v) statutory interest as authorized and allowable under M.C.L. § 600.6013; (vi) exemplary damages; (vii) the costs of this action; and (viii) such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT VI – INNOCENT MISREPRESENTATION
### (AGAINST THE STATLER DEFENDANTS)

206.    Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 205 of this Complaint as though fully set forth in this paragraph.

207.    Mr. Runels and the Statler Defendants, as parties to the Buy and Sell Agreement, were in privity of contract with each other.

208.    In Article 10(a) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [we]re no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting the property."

209.    At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, the Statler Defendants were in violation of their obligations under M.C.L. § 324.20107a(1), including by virtue of their failure to (a) undertake measures as were necessary to prevent exacerbation of hazardous substances at the Property; (b) exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety; and (c) take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.

210.    The Statler Defendants' representation in Article 10(a) of the Buy and Sell Agreement was therefore false, incomplete, and misleading.

211.     In Article 10(b) of the Buy and Sell Agreement, the Statler Defendants represented that, except as otherwise disclosed in writing, and to the best of their knowledge and belief, "[t]here [was] no pending or threatened litigation, administrative action or claim relating to the property."

212.     At the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels, however, there was a pending or threatened litigation, administrative action, or claim relating to the Property.

213.     EGLE's continuing classification and regulation of the Property as a facility constitutes pending administrative action relating to the Property.

214.     EGLE's declaration in its Remediation Information Data Exchange that there are "Risks Present" on the Property that "Require Action in [the] Short-Term" constitutes a pending or threatened litigation, administrative action, or claim relating to the Property.

215.     The Resolution adopted by the Van Buren/Cass Health Department—which imposed a continuing ban on the construction of new wells on the Property and provides for the continuing regulation and monitoring of wells on and about the Property—constitutes pending administrative action relating to the Property.

216.     The Statler Defendants' representation in Article 10(b) of the Buy and Sell Agreement was therefore false, incomplete, and misleading.

217.     At the time that Mr. Runels remitted payment of the Purchase Price to the Statler Defendants on March 12, 2021, in exchange for the Runels Deed, Mr. Runels was unaware of any groundwater contamination or environmental issues, or any related use restrictions or limitations, on the Property.

218. The Statler Defendants made the false, incomplete, and misleading representations in Article 10(a) and Article 10(b) of the Buy and Sell Agreement knowing that they were material to the Real Estate Transaction and would be acted upon by Mr. Runels.

219. Mr. Runels did, in fact, act in reliance upon the false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement.

220. The false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement constitute material misrepresentations.

221. The false, incomplete, and misleading representations made by the Statler Defendants in Article 10(a) and Article 10(b) of the Buy and Sell Agreement constitute innocent misrepresentations.

222. As a result of the Statler Defendants' innocent misrepresentations, Mr. Runels has already sustained—and will continue to sustain—losses and damages, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur—property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake additional measures, and incur additional costs

and expenses, in connection with environmental assessments, testing, and response activities on the Property.

223.    The damages that Mr. Runels has already sustained—and will continue to sustain—as a result of the Statler Defendants' innocent misrepresentations were foreseeable to the Statler Defendants at the time of their execution of the Buy and Sell Agreement, as well as at the time of their execution and delivery of the Runels Deed to Mr. Runels.

224.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count VI of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendants Ray P. Statler and Leslie A. Statler, jointly and severally:

A.    Rescinding the Buy and Sell Agreement, the Runels Deed, and the Real Estate Transaction; and

B.    Awarding Mr. Runels an amount to be proven at trial, which shall include, without limitation, (i) $336,000.00 to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (ii) $30,600.00 to reimburse Mr. Runels for the costs and expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (iii) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (iv) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (v) statutory interest as authorized and allowable under M.C.L. § 600.6013;

(vi) the costs of this action; and (vii) such other and further relief as this Court deems necessary and proper under the circumstances.

## COUNT VII – BREACH OF TITLE INSURANCE POLICY
### (AGAINST CHICAGO TITLE)

225.     Pursuant to Fed. R. Civ. P. 10(c), Mr. Runels incorporates by reference the allegations contained in paragraphs 1 through 224 of this Complaint as though fully set forth in this paragraph.

226.     Mr. Runels paid the premium for, and obtained, the Title Insurance Policy, in the amount of $336,000.00 to insure, among other things, (a) the vesting of fee simple title to the Property in himself, and (b) against loss or damage that he may sustain or incur by reason of (i) the title to the Property being vested other than as fee simple in him, (ii) any defect in or lien or encumbrance on the title, including a defect in the title to the Property caused by fraud or any document affecting title not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered, (iii) the title to the Property being unmarketable, or (iv) the violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to the occupancy, use, or enjoyment of the Property or environmental protection.

227.     As a result of the Statler Defendants' failure to comply with the requirements of M.C.L. § 324.20116(1), the Buy and Sell Agreement, the Runels Deed, and the Statler Defendants' attempt to transfer title to the Property to Mr. Runels were defective, void, and ineffective to vest title to the Property in Mr. Runels.

228.     As a result of the Statler Defendants' statutory violations, material misrepresentations, and fraudulent conduct, the Buy and Sell Agreement, the Runels Deed, and

the Statler Defendants' attempt to transfer title to the Property to Mr. Runels are defective, void or

voidable, ineffective to vest title to the Property in Mr. Runels, and subject to rescission.

229.    In addition, in light of the DNR Notice, the Resolution, and the obligations imposed

by M.C.L. § 324.20107a(1), Mr. Runels has sustained or incurred losses and damages by reason

of the violation or enforcement of laws, ordinances, permits, or governmental regulations

(including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

the occupancy, use, or enjoyment of the Property, or environmental protection, where a notice,

describing any part of the Property, was recorded in the Public Records (as defined in the Title

Insurance Policy) setting forth the violation or intention to enforce.

230.    By the letter sent from Mr. Runels' counsel to Chicago Title on March 26, 2021,

Mr. Runels provided Chicago Title with satisfactory proof of loss.

231.    Mr. Runels is, therefore, entitled to coverage under Covered Risks 1, 2, 3, and 5 of

the Title Insurance Policy.

232.    Under the terms of the Policy, Chicago Title has an obligation to afford Mr. Runels

coverage under the Policy and to remit payment to Mr. Runels for the full policy amount of

$336,000.00.

233.    Chicago Title has denied, and continues to deny, Mr. Runels' claim for coverage

under the Title Insurance Policy.

234.    By denying Mr. Runels' title insurance claim, Chicago Title has materially

breached its obligations to Mr. Runels under the Title Insurance Policy.

235.    In the March 26, 2021 letter, Mr. Runels' counsel notified Chicago Title that:

(a) the Property constitutes a facility under Michigan law; (b) the Statler Defendants failed to

provide notice to Mr. Runels as required by M.C.L. § 324.20116(1); (c) the Statler Defendants'

48

failure to comply with M.C.L. § 324.20116(1) rendered the Runels Deed void; (d) Mr. Runels does not hold, and never has held, title to the Property; and (e) Mr. Runels is entitled to coverage under the Policy.

236.    In the March 26, 2021 letter, and in a follow-up letter sent to Chicago Title on May 12, 2021, Mr. Runels' counsel notified Chicago Title that, absent a prompt resolution of Mr. Runels' title insurance claim, Mr. Runels would be compelled to incur the expense of, and pay for, environmental assessments in order to be afforded protection under the NREPA.

237.    In a good faith attempt to resolve Mr. Runels' title insurance claim without the need for court intervention, Mr. Runels sent the letters to Chicago Title on October 19, 2021, December 23, 2021, and February 14, 2022; however, Chicago Title continues to deny coverage for Mr. Runels' title insurance claim.

238.    By denying Mr. Runels' title insurance claim and refusing to afford him coverage under the Title Insurance Policy, Chicago Title has acted in bad faith.

239.    As a direct and proximate result of Chicago Title's material breach of its obligations under the Title Insurance Policy, Mr. Runels has already sustained—and will continue to sustain— losses and damages, including, without limitation, in that he (a) paid the Purchase Price to the Statler Defendants, but did not receive valid, marketable, and fee simple title to the Property; (b) is restricted from constructing any new wells on the Property, or any residential, recreational, commercial, or agricultural structures or improvements that would require access to a well, which substantially diminishes the value of the Property; (c) was compelled to pay $30,600.00 to Nexus to obtain environmental assessments that were necessary for him to be afforded protection under the NREPA; (d) has incurred—and will continue to incur—property taxes, insurance premiums, and other holding costs in relation to the Property; and (e) may be compelled to undertake

additional measures, and incur additional costs and expenses, in connection with environmental assessments, testing, and response activities on the Property.

240.    M.C.L. § 500.2006(1) provides that a "person must pay on a timely basis to its insured . . . the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured . . . 12% interest, as provided in subsection (4) [of M.C.L. § 500.2006] on claims not paid on a timely basis."

241.    Under M.C.L. § 500.2006, a payment is considered timely if it is paid within "60 days after receipt of proof of loss by the insurer."

242.    Pursuant to M.C.L. § 500.2006(4), "[i]f benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract."

243.    By virtue of the letters sent by Mr. Runels' counsel to Chicago Title on March 26, 2021, and May 12, 2021, Chicago Title knew that Mr. Runels would sustain consequential damages—including, without limitation, in connection with any environmental assessments, testing, and response activities on the Property—if Chicago Title failed to promptly resolve his title insurance claim and afford him coverage under the Title Insurance Policy.

244.    The consequential damages that have been, and will continue to be, sustained by Mr. Runels—including, without limitation, any costs and expenses for environmental assessments, testing, and response activities on the Property, as well as the amounts that Mr. Runels has and hereafter will be compelled pay for property taxes, insurance premiums, and other holding costs relating to the Property—arose naturally and foreseeably from Chicago Title's failure to afford coverage to Mr. Runels under the Title Insurance Policy.

245.    All conditions precedent for the institution and prosecution of this action have occurred, been performed, or been satisfied.

**WHEREFORE**, as and for his prayer for relief under Count VII of this Complaint, the Plaintiff, Jeffrey D. Runels, respectfully requests that the Court enter judgment in his favor and against Defendant Chicago Title Insurance Company, in an amount to be proven at trial, which shall include, without limitation, (a) the full amount of the Title Insurance Policy, in the sum of $336,000.00, to reimburse Mr. Runels for the Purchase Price that he paid to the Statler Defendants; (b) $30,600.00 to reimburse Mr. Runels for the costs and expenses that he incurred and paid to Nexus for the environmental assessments on the Property; (c) an amount sufficient to compensate and reimburse him for all property taxes, insurance premiums, and other holding costs that he has incurred—and will continue to incur—in relation to the Property; (d) an amount sufficient to compensate and reimburse him for all costs and expenses that he has incurred—and hereafter may incur—in connection with environmental assessments, testing, and response activities on the Property; (e) statutory interest as authorized and allowable under M.C.L. § 500.2006 and M.C.L. § 600.6013; (f) the costs of this action; and (g) such other and further relief as this Court deems necessary and proper under the circumstances.

Date:    March 12, 2023                                    Respectfully submitted,

                                                             /s/ Bradford R. Shively
SANDERS • PIANOWSKI, LLP                            Bradford R. Shively
300 Riverwalk Drive                                        Attorney Number 28066-20
Elkhart, IN  46516                                         bshively@riverwalklaw.com
Telephone: (574) 294-1499                            Jonathan R. Slabaugh
Facsimile: (574) 294-7277                             Attorney Number 28781-20
                                                           jslabaugh@riverwalklaw.com

                                                           Attorneys for Plaintiff
                                                           Jeffrey D. Runels